UNITED STATES DISTTICT COURT
WESTERN DISTTICT OF NEW YORK

_____

DONALD REINARD, #10B1840,

        Petitioner,

     -v-

STATE OF NEW YORK,

        Respondent.

_____

No. 17-CV-0708 (LJV)(MJR)
**Report and Recommendation**

## INTRODUCTION

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C). (Dkt. No. 20) The self-represented petitioner has filed an application to this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court convictions of first-degree sexual conduct against a child and first-degree attempted sexual abuse. (Dkt. No. 1)

Petitioner's grounds for relief can be summarized as follows: (1) his guilty plea was not knowing and intelligent; (2) he was deprived of a constitutional right to appointed counsel in his state collateral proceeding; (3) his plea violated the Double Jeopardy clause; (4) the sentence is cruel and unusual; (5) plea counsel gave him misleading and uninformed advice regarding his guilty plea; and (6) the supplemental victim fee statutorily imposed on those convicted of sex offenses violates the Equal Protection Clause. (Dkt. No. 2 at 20-75)

1

Petitioner also requests a stay and abeyance so that he can return to state court to exhaust additional theories of involuntariness of his guilty plea. (Dkt. No. 18 at 22) Therein, he also requests: (1) an order "directing the State Attorney General to Correct and/or Amend their State Court Record;" (2) an order "directing the expansion of the record;" (3) a hearing "on the grounds the State Court has failed to provide [him] with a full and fair hearing;" (4) appointment of counsel; and (5) an extension of time to file a traverse. (*Id.*)

Respondent filed the sealed State Court Record ("SR."), a Memorandum of Law (Dkt. No. 9) and an Opposition to Petitioner's Motion to Stay. (Dkt. No. 23)

For the reasons that follow, the Court recommends that Petitioner's request for a stay-and-abeyance be denied, and that the Petition be dismissed.


## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner's conviction stems from his repeated sexual abuse of four children, ages five through nine, for a little over one year.

Following a felony complaint in Town of Cambria Court, Petitioner pled guilty to two counts of Course of Sexual Conduct Against a Child, N.Y. Penal L. § 130.75[1][a], and two counts of Attempted Sexual Abuse in the First Degree, N.Y. Penal L. §§ 110.00, 130.65, on March 26, 2010.

On June 8, 2010, due to a jurisdictional defect, Petitioner was permitted to withdraw his plea and re-enter a plea to one of the four counts. The Niagara County Court sentenced him to an aggregate determinate term of 40 years of imprisonment and 60 years of post-release supervision.

Petitioner appealed his convictions to the Appellate Division, Fourth Department, on the grounds that his appeal waivers were invalid and guilty pleas were null and void

because he "clearly did not receive advice or information that his sentence would be the maximum allowed by law," and his sentence was harsh and excessive under New York law because it failed to reflect the rehabilitative spirit of state law. (SR. 62-72) Petitioner also submitted a *pro se* supplemental brief, claiming, *inter alia,* that his plea was involuntary because he was not informed of the collateral consequences of pleading guilty, his sentence is unconstitutionally cruel and unusual, various New York statutes are unconstitutional either on their face or as applied to him, plea counsel was ineffective, and that he has a federal constitutional right to appointed counsel to litigate a post-judgment motion in state court. (SR. 111-156)

On December 23, 2015, the Appellate Division unanimously affirmed the judgement of conviction, *People v. Reinard*, 134 A.D.3d 1407 (4th Dep't 2015), and subsequently denied leave to reargue. *People v. Reinard*, 138 A.D. 1514 (4th Dep't 2016). On May 17, 2016, the Court of Appeals denied leave to appeal, *People v. Reinard*, 27 N.Y.3d 1074 (2016).

On March 31, 2015, Petitioner moved in Niagara County Court to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, claiming: (1) the charging documents were unconstitutional because they were jurisdictionally defective; (2) the sentence violated the Eighth and Fourteenth Amendments; (3) New York's mandatory surcharges and fees for people convicted of sexual offenses, as well as New York's civil commitment statute, are unconstitutional; (4) ineffective assistance of counsel rendered his plea invalid; (5) he was entitled to assignment of counsel in his state § 440.10 proceeding; and (6) New York's post-judgment motion statutes are

unconstitutional as applied to him. (SR. 274-335) That motion was denied on September 1, 2015. (SR. 503-07)

Petitioner moved to reargue the § 440.10 court's decision, raising two additional claims: (1) the plea was invalid because the SOMTA (Sex Offender Management and Treatment Act)[1] civil confinement consequences should have been addressed by the court at the time of his plea; and (2) the plea was invalid because the court failed to pronounce the imposition of the $4,000 supplemental sex offender victim fee prior to its entry. (SR. 502-07) The state court again rejected Petitioner's arguments. (SR. 606-07) Leave to appeal those decisions was denied by the Appellate Division. (SR. 609-15, 644)

Petitioner filed a second § 440.10 motion on July 25, 2018. (Dkt. No. 18 at 68) Therein, he argued: (1) his plea was invalid because he was not informed of the disclosure requirement of N.Y. Mental Hygiene L. § 10.08 and that the law is unconstitutional as applied to him; (2) his plea was invalid because the County Court failed to keep its sentencing promise with respect to post-release supervision; (3) his plea was invalid because he was not informed of the consequences of the SOMTA; and (4) he is entitled to a hearing in state court on these issues. (Dkt. No. 18 at 77-95) That motion remains pending in Niagara County Court.

On October 5, 2016, Petitioner sought a writ of *error coram nobis* in the Appellate Division, alleging ineffective assistance of appellate counsel. (SR. 645-65) On

---

[1] "In 2007, the New York State legislature enacted MHL Article 10, known as the Sex Offender Management and Treatment Act ("SOMTA"), creating a statutory scheme prescribing the procedures to be followed with respect to convicted sex offenders who might require civil commitment or supervision following completion of their prison terms." *Roache v. Fischer*, No. 9:12-CV-1034, 2015 WL 1442963, at *5 (N.D.N.Y. Mar. 26, 2015).

December 23, 2016, the Appellate Division denied the writ. *People v. Reinard*, 145 A.D.3d 1658 (4th Dep't 2016). On May 22, 2017, the Court of Appeals denied leave to appeal. *People v. Reinard*, 29 N.Y.3d 1036 (2017).

Petitioner filed a second application for writ of *error coram nobis* on May 22, 2018, again asserting that appellate counsel was constitutionally ineffective. (Dkt. No. 18 at 52-60) On June 29, 2018, the Appellate Division, Fourth Department denied petitioner's *coram nobis* application, and on November 14, 2018, the Court of Appeals denied leave to appeal. *People v. Reinard*, 162 A.3d 1776 (4th Dep't), *lv. denied*, 32 N.Y.3d 1114 (2018).

**DISCUSSION**

### *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. It is well-settled that "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and "it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

State court findings of "historical" facts, and inferences drawn from those facts, are entitled to a presumption of correctness. *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert. denied*, 479 U.S. 805 (1986); *see also* 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct." The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to findings both by state trial courts and by state appellate courts. *Smith v. Sullivan*, 1 F. Supp.2d 206, 210-11 (W.D.N.Y. 1998); *Nevius v. Sumner*, 852 F.2d 463, 469 (9th Cir. 1988), *cert. denied*, 490 U.S. 1059 (1989).

**Exhaustion Requirement**

Section 2254 requires a petitioner to show that he "exhausted the remedies available in the courts of the State" before a federal court will consider his request for relief. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a petitioner must "fairly present federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 Fed. Appx. 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner exhausts if he "presented [his] constitutional claim to the highest state court from which a decision can be obtained."

*Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

Where the petition is a "mixed petition," containing both exhausted and unexhausted claims, the court can deny the unexhausted claims if they are plainly meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Ortiz v. Marshall*, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) ("Federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous.").

### Procedural Bar

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an

7

*alternative* holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

**Petitioner's Motion to Stay**

On August 20, 2018, Petitioner filed a 95-page motion for a stay and abeyance of the instant Petition. (Dkt. No. 18)  Therein, he claims to seek a stay to exhaust the new claims raised in his second § 440.10 motion, which is currently pending in Niagara County Court. Petitioner has not submitted a proposed Amended Petition incorporating the new claims. In order to introduce a new, unexhausted claim, he must first seek approval to amend the petition to include the new claim before seeking a stay. *See Hall v. Woods*, No. 07 CIV. 9264, 2012 WL 2864505, at *5 (S.D.N.Y. July 12, 2012). Nonetheless, given the Court's obligation to construe *pro se* submissions "liberally" and interpret them to "raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006), the Court reads Petitioner's current motion to include a motion to amend the Petition to add the unexhausted claims contained in the most recent § 440.10 motion. *See Simmons v. Sheahan*, No. 14 CIV. 3998, 2015 WL 5146149, at *4 (S.D.N.Y. Aug. 31, 2015). With the addition of the new claims, Petitioner's federal habeas petition is now a mixed petition.

The Supreme Court has held that district courts have the discretion to issue stays in habeas corpus proceedings. *Rhines v. Weber*, 544 U.S. 269 (2005). "A stay should be granted when a court finds (1) 'good cause' for petitioner's failure to exhaust his claims prior to filing the petition; (2) the unexhausted claims are 'potentially meritorious'; and (3) there is no indication that petitioner 'engaged in intentionally dilatory litigation tactics.'" *Sherrod v. Artus*, No. 13-CV-6539, 2016 WL 3459539 at *2 (W.D.N.Y. 2016) (citing *Rhines*, 544 U.S. at 277-78).

Here, in order to qualify for a stay under *Rhines*, Petitioner must show "good cause" for the delay from the time he was put on notice of these issues until the time he filed the § 440.10 motion and the motion for stay. Petitioner does not purport to show good cause for the delay, nor can he show that the unexhausted claims are potentially meritorious. To the contrary, the three claims he seeks to incorporate into his Petition have either already been resolved by the state courts, are not cognizable on habeas review, or are plainly meritless, as discussed below. Finally, Petitioner's repetitive and voluminous filings both here and in the state courts raises concerns that Petitioner has engaged in "dilatory" litigation tactics.

Because the motion for stay and abeyance should be denied, Petitioner's additional requests for expansion of the court record, assignment of counsel, and an evidentiary hearing should be denied as well. The Court further recommends that Petitioner's request for an extension of time to reply to Respondent's opposition to his motion for a stay be denied as moot as he filed a letter traverse on January 29, 2020. (Dkt. No. 24)

**Petitioner's Habeas Challenges**

I.     Involuntary Guilty Plea

Petitioner claims that his guilty pleas were unknowing, unintelligent, and therefore involuntary because: (a) he was forced to waive his right against self-incrimination at sentencing; (b) neither plea counsel nor the court advised him that he was potentially subject to civil confinement under SOMTA; (c) he was never advised of a supplemental victim fee; (d) the court failed to order a pre-sentencing conference

9

regarding the defense expert's report; and (e) appellate counsel failed to raise these four claims in his counseled brief to the Appellate Division.[2] (Dkt. No. 2 at 34-48)

Petitioner raised this claim on direct appeal, which was rejected by the Appellate Division:

> [D]efendant contends in his main and *pro se* supplemental briefs that his respective pleas were involuntarily entered. Although those contentions survive his valid waivers of the right to appeal, they are not preserved for our review inasmuch as defendant failed to move to withdraw the respective pleas or to vacate the judgments of conviction . . . and nothing in the plea colloquies casts significant doubt on defendant's guilt or the voluntariness of his pleas, and the narrow exception to the preservation requirement therefore does not apply . . . .

*Reinard*, 134 A.D.3d at 1408.

Additionally, Petitioner raised various challenges to the validity of his plea in his first § 440.10 motion for rehearing regarding the court's failure to advise Petitioner of SOMTA and the supplemental sex offender victim fee. (SR. 588) The § 440.10 court rejected these contentions. (SR. 607)

Respondent asserts defenses of non-exhaustion and procedural default. (Dkt. No. 9 at 15) In light of the convoluted procedural history of this case, the Court elects to resolve Petitioner's claims on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); *accord, Boddie v. NYS Div. of Parole,* 288 F.Supp.2d 431, 439 (S.D.N.Y.2003) ("[P]otentially complex and difficult issues about the various obstacles to reaching the

---

[2] The Court addresses Petitioner's claims of attorney ineffectiveness in Section III. of this Report and Recommendation.

merits [of a habeas petition] should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted); *Anderson v. Graham*, No. 15-CV-06687, 2018 WL 1428249, at *2 (W.D.N.Y. Mar. 22, 2018) ("the Court declines to resolve the issues raised by Respondent's assertion of the defenses of non-exhaustion and procedural default, and instead proceeds directly to consideration of the merits of Petitioner's claims.").

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea is not involuntary merely because "the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* A guilty plea is valid even if the defendant "understood the consequences . . . only in a fairly rudimentary way . . . [and] it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation marks and citation omitted).

At the outset, Petitioner was represented by counsel throughout the plea-bargaining process, whose skillful negotiation resulted in an agreement that would cap Petitioner's sentence at 40 years of imprisonment.[3]  As Petitioner repeatedly stated during the plea colloquies, counsel had discussed the various risks and benefits of the plea offer, and Petitioner understood the rights he was surrendering. (SR. 003-018, 024-060) Nor is there any evidence that Petitioner was threatened, coerced, or incapable of rational cognition at the time of the plea. Nothing in the plea proceedings or the written waivers indicate that his plea was not knowing or voluntary. *See Bonnett v. Shehan*, No. 15-CV-6627, 2018 WL 6250991, at *5 (E.D.N.Y. Nov. 28, 2018) ("on its face, the record demonstrates that Petitioner voluntarily pled guilty with a full understanding of the rights that he was waiving by pleading guilty.")

A.     Self-Incrimination at Sentencing

With respect to Petitioner's specific arguments, he first reiterates claim raised in his *pro se* supplemental brief on appeal and in his initial § 440.10 motion: that he was compelled to waive his privilege against self-incrimination at sentencing when the sentencing court questioned him about his motivation for the crimes before imposing sentence. (Dkt. No. 2 at 34-39; SR. 136-38, 305-07) The Appellate Division broadly rejected Petitioner's contentions in his *pro se* brief as not requiring reversal or modification of the judgments. *Reinard*, 134 A.D.3d at 1409. The § 440.10 court refused to consider this claim as duplicative of the claim raised on his then-pending direct appeal. (SR. 506) *See* N.Y. Crim. Proc. L. § 440.10[2][b] (court must deny motion where

---

[3] Under the agreement, the predatory sexual assault charge, which carried a potential sentence of 10 years to life imprisonment, was dropped, and Petitioner was eligible for a maximum term of as little as five but no more than 40 years. *See* N.Y. Crim. Proc. L. §§ 70.00[2][a], 70.80[4][a].

the judgment is pending on appeal and sufficient facts appear in the record to permit adequate review).

Petitioner exercised his right to speak at sentencing, saying "I know what I did was wrong . . . . I just hope that someday, someday I can maybe help my children understand why I did this." (SR. 054-055) The sentencing court invited Petitioner to explain this comment, asking, "What was it about these little girls that gave you these feelings?" (*Id.*) Petitioner replied, "It's just, it felt good . . . . there's nothing about little girls that turn me on . . . . I don't know why I did it. Just I, just stuff I got caught up into and I couldn't stop doing it." (*Id.* at 056) The court responded, "In my opinion . . . you are a horrific risk to re-offend, and this community is not safe as long as you are a part of it." (*Id.* at 057) The court then imposed consecutive determinate terms of 16 years of imprisonment followed by 20 years of post-release supervision on each of the two sexual-conduct counts, as well as consecutive determinate terms of four years of imprisonment followed by 10 years of post-release supervision on each of the two attempted-sexual-abuse counts. The court also imposed required court costs and fees totaling $4,425. (*Id.*)

The plea transcript reveals that Petitioner affirmatively elected to exercise his right to speak at sentencing, presumably because he wanted to demonstrate remorse to the sentencing court. (SR. 54-56) "A sentencing judge may properly consider a defendant's remorse, or lack thereof, in determining a sentence. Doing so does not infringe a defendant's Fifth Amendment rights." *Geraci v. Senkowski*, 23 F.Supp.2d 246, 267–68 (E.D.N.Y.1998). The sentencing court considered Petitioner's explanation, and, while imposing the maximum term of the agreed-upon range, it did not exceed it. *See*

13

*Robinson v. Heath*, No. 12-CV-2116, 2013 WL 5774544, at \*13 (E.D.N.Y. Oct. 24,

2013) ("Although the trial court's questioning was arguably intrusive, ultimately,

sentence imposed—twenty-one years—was within the statutory limits and below the

maximum sentence of twenty-five years requested by the prosecutor and authorized by

state statute."). Here, the trial court's request for an explanation for Petitioner's conduct

was not a compulsion to incriminate himself. *See El v. Artuz*, 105 F. Supp. 2d 242, 255

(S.D.N.Y. 2000) (trial judge's comment that he would take into account any

"understanding of the situation" petitioner could provide, did not compel petitioner to

incriminate himself).

### B.    SOMTA Consequences; Mandatory Fines

Petitioner claims that plea counsel and/or the state court failed to advise him that

he was potentially subject to civil confinement under SOMTA after the expiration of his

sentence. (Dkt. No. 2 at 39-43) He raised this claim in his supplemental *pro se* brief on

appeal, and in a motion to reargue his initial § 440.10 application. (SR. 131-34, 576,

594) The Appellate Division and the § 440.10 rejected Petitioner's contentions.

Specifically, the § 440.10 court held:

> [I]t is well settled that consequences resulting from SOMTA are collateral
> in nature (*See, People v. Harnett*, 16 NY3d [2011]). The New York State
> Court of Appeals in *Harnett* [ ] held that a court's failure to warn a
> defendant of SOMTA during a plea allocution does not make the plea *per
> se* invalid. (*Id.*) Here, other than Defendant's buyer's remorse, there is no
> evidence that SOMTA would have been a significant factor of the plea
> bargain.

(SR. 607)

First, the Supreme Court has not held that collateral consequences like these are

so integrally related to a guilty plea that the defendant must understand them before

pleading guilty. *See, e.g., Hill*, 474 U.S. at 60 (reserving question of whether erroneous advice about particular collateral consequences can be ineffective assistance of counsel sufficient to invalidate guilty plea). Instead, the general rule is that collateral consequences of a guilty plea "need not be explained to the defendant in order to ensure the plea is voluntary." *United States v. United States Currency in Amount of $228,536.00*, 895 F.2d 908, 915 (2d Cir. 1990). But because "[t]he Supreme Court has not defined which consequences of a guilty plea are direct and which are collateral," "[t]here can be no unreasonable application of clearly established federal law as determined by the Supreme Court . . . ." *Pignataro v. Poole*, 381 Fed. Appx. 46, 49 (2d Cir. 2010); *see also Bonner v. Ercole*, 338 Fed. Appx. 61, 62 (2d Cir. 2009). It also bears noting that the Second Circuit has described as a "collateral consequence" the possibility that a defendant could be civilly committed under the federal sex-offender statute after the expiration of a criminal sentence, because such commitment is "a remote and uncertain consequence" of the plea. *United States v. Youngs*, 687 F.3d 56, 62 (2d Cir. 2012).

Second, even if the trial court's plea colloquy did not articulate the possibility of civil confinement under SOMTA, Petitioner was advised by counsel by letter that he "would be considered a Level 3 Sex Offender . . . . [and] may be subject to civil commitment which I explained to you in great detail." (SR. 001) Petitioner's written appeal waivers specifically cautioned him that "this plea creates the potential for post release confinement as a result of civil confinement proceedings pursuant to New York State [M]ental Hygiene Law Article 10." (SR. 019, 061) Petitioner's claim of improper notice of the SOMTA consequences is belied by the record and without merit.

Petitioner also claims that no one informed him of the possibility that he would be ordered to pay various mandatory court costs and fees, and that had he been made aware of the possibility that up to $4,000 would be gradually deducted from his prison wages, he would have refused the plea offer and risked life imprisonment. (Dkt. No. 2 at 43; SR. 131-32)

> In an order denying rearguement, the § 440.10 court found:
>
>> In *People v. Hoti*, 12 NY3d 742 [2009], the Court of Appeals held that the imposition of fees are not components of a sentence. In *People v. Chandler*, 31 Misc. 3d 144 [2009], the court specifically held that a court's failure to pronounce the supplemental sex offender victim fee prior to the entry of the plea did not deprive defendant of the opportunity to knowingly, voluntarily and intelligently choose among alternative courses of action, citing *Hoti*, (*Supra* at 743).

(SR. 607)

Petitioner does not assert a violation of New York state law, much less clearly established federal law. The Supreme Court has not held that a defendant must understand collateral consequences—such as a fine—to enter a valid plea. As the Second Circuit has explained, a defendant's ignorance of the possibility of a fine when he pled guilty is not a constitutional error that warrants federal habeas relief. *See Lucas v. United States*, 963 F.2d 8, 14 (2d Cir. 1992). In any event, Petitioner's claim that he would have elected to go to trial, facing a probable guilty verdict with the possibility of a life sentence,[4] had he known of the fee impositions, is dubious. *See Morgan v. Lee*, No. 11-CV-390, 2012 WL 5336167, at *8 (W.D.N.Y. Oct. 26, 2012) ("A federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation.")

---

[4] *See* SR. 001 (Attorney correspondence to Petitioner stating, "In light of your confession and recorded telephone admission, a trial would most likely result in a conviction. As I further explained, there is a significant downside to a trial.").

(internal quotation marks and citation omitted); *see also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (noting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support").

C.    Defense's Expert Report

Petitioner claims his guilty plea was involuntary because "the sentencing court had a problem with [defense expert's sex offender risk assessment] report, but failed to initiate the procedural protections offered under C.P.L. § 400.10 to resolve any discrepancies and/or concerns the sentencing court had[.]" (Dkt. No. 2 at 37; SR. 271)[5] The supposed "problem" with the defense report is that the state court did not find it credible:

> I don't understand Doctor Heffler's report. To have that kind of sexual contact and conduct with four little girls over a year and to say that . . . you're a low risk to reoffend just boggles my mind . . . . In my opinion . . . you are a horrific risk to re-offend, and this community is not safe as long as you are a part of it.

(SR. 056-57)

A state court's adverse credibility determination is not a basis for federal habeas relief; indeed, it precludes relief absent clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). Petitioner has offered no such evidence.

In summary, the state courts' repeated affirmations of the plea's voluntariness were not contrary to clearly-established federal law. The Court therefore recommends dismissal of Petitioner's claims asserting that his plea was involuntary.

---

[5] To the extent that Petitioner seeks to challenge the § 440.10 court's application of state procedural law that permits a sentencing court to convene a pre-sentence conference "in its discretion," *See* N.Y. Crim. Proc. L. § 400.10[1], he is reminded that errors of state law do not set forth a basis for habeas relief. *See Estelle*, 502 U.S. at 67-68 (1991); *see also supra*, Discussion at V.

II.    Double Jeopardy

Petitioner claims that the procedure used to rectify the jurisdictional defect in his March 26, 2010 guilty plea – wherein the parties agreed that he would be indicted on the charge of Predatory Sexual Assault Against a Child, he would withdraw his plea to one count of Sexual Conduct Against a Child in the First Degree, and he would be permitted to re-plead to the sexual-conduct count in satisfaction of the indictment – violated the Fifth Amendment's Double Jeopardy Clause. (Dkt. No. 2 at 68-74)

Petitioner challenged the superior court information ("SCI") and indictment in his *pro se* supplemental brief on direct appeal as violative of state law. (SR. 122-26) The Appellate Division held that Petitioner's "waiver of indictment and consent to be prosecuted under a superior court information was not jurisdictionally defective." *Reinard*, 134 A.D.3d at 1409.

Petitioner was initially charged by felony complaint in Town of Cambria Court with first-degree Predatory Sexual Assault against a Child, N.Y. Penal L. § 190.96, a Class A-II felony, as to one of the minor victims. In New York, a defendant charged with a class A felony is statutorily prohibited from waiving indictment and proceeding under an SCI. *See* N.Y. Crim. Proc. L. § 195.10[1][b]. Under state law, Petitioner's waiver of indictment on March 26, 2010, was invalid, and the original felony complaint remained pending against him. *See People v. Trueluck*, 88 N.Y.2d 546, 551 (1996); *People v. Banville*, 134 A.D.2d 116 (2d Dep't 1988) (court lacks jurisdiction to accept guilty plea pursuant to invalid waiver of indictment). Moreover, because Course of Sexual Conduct Against a Child is a lesser-included offense of Predatory Sexual Assault Against a Child, the court also lacked jurisdiction to accept petitioner's plea to Course of Sexual

Conduct against that victim. *See People v. Pierce*, 14 N.Y.3d 564, 569 (2010) (prohibiting waiver of indictment and guilty plea to lesser-included offense of Class A felony because "such a substitution would be nothing more than an 'end run' around the statutory prohibition").

Petitioner agreed to plead guilty to lesser charges in lieu of having to face trial for Predatory Sexual Assault Against a Child. To rectify the defective plea, the prosecution consented to the withdrawal of his guilty plea, to present the felony complaint to the grand jury, and to immediately re-extend the plea offer. (SR. 004-05) Petitioner agreed, and on June 7, 2010, a Niagara County Grand Jury indicted him on the felony complaint of one count each of Predatory Sexual Assault Against a Child and Course of Sexual Conduct Against a Child in the First Degree. (SR. 022-23) The following day, Petitioner waived a formal reading of the indictment, pled not guilty, and immediately entered a negotiated guilty plea to the lesser offense in satisfaction of the indictment. (SR. 025-35) Having eliminated the Predatory Sexual Assault charge, the parties consented to vacatur of his previous guilty plea to Course of Sexual Conduct Against a Child in the First Degree and to dismissal of the charge. (SR. 034-35) Petitioner signed an appeal waiver indicating that he understood and consented to this procedure. (SR. 060-61)

According to Petitioner, he was twice placed in jeopardy for the same offense: because he pled guilty to one count of the indictment immediately before the court vacated a corresponding guilty plea in SCI, he was "simultaneously" adjudicated guilty of two counts of Course of Sexual Conduct against a single victim. (Dkt. No. 2 at 68-74) Petitioner is incorrect.

"The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Constant v. Martuscello*, 677 Fed. Appx. 727, 728 (2d Cir.) (citation and internal quotation marks omitted), *cert. denied*, 137 S. Ct. 2204 (2017). "It has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside . . . because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (collecting cases).

The Fifth Amendment "represents a constitutional policy of finality for the defendant's benefit in federal [or state] criminal proceedings." *United States v. Jorn*, 400 U.S. 470, 479 (1971) (plurality opinion). A defendant's "voluntary choice" by way of a plea agreement to "seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he was accused, suffers no injury cognizable under the Double Jeopardy Clause" if he is subsequently retried. *Ricketts v. Adamson*, 483 U.S. 1, 11 (internal quotation marks and citation omitted).

Here, the Niagara County Court lacked jurisdiction to accept a plea to the A-II felony (and lesser included offense) prior to an indictment. Where a court purports to adjudicate a defendant's "actual guilt or innocence" but is subsequently discovered to have lacked jurisdiction to do so, the purported judgment "is a nullity that can have no double jeopardy implications." *United States v. Khan*, 822 F.2d 451, 454 (4th Cir. 1987). Indeed, New York state habeas courts have rejected this argument under similar circumstances:

20

> There is no merit to the appellant's contention that his conviction was barred by State or Federal prohibitions against double jeopardy. His initial plea and resulting conviction were legal nullities because, having been charged with a class A felony, he could not legally waive indictment. Accordingly, the court in which he entered his plea lacked subject matter jurisdiction, and jeopardy did not attach.

*People ex rel. Aurnou ex rel. Doe v. Strack*, 286 A.D.2d 690, 691 (2nd Dep't. 2001); *see also, e.g., People ex rel. Leventhal v. Warden of Rikers Island*, 102 A.D.2 317, 322 (1st Dep't 1984) ("The double jeopardy clauses of the Federal and State Constitutions do not bar the vacatur of defendant's conviction and the prosecution of the indictment against him . . . . where the entry of a conviction is manifestly improper because the court lacked jurisdiction"). Accordingly, Petitioner asserts no violation of federal or state law because jeopardy did not attach to the March 26, 2010 plea. The Court therefore recommends that this claim be dismissed.

III.     Ineffective Assistance of Counsel

Petitioner avers that plea counsel was ineffective for failing to: (1) inform him about any of the viable affirmative defenses which were available to reduce the liability for his conduct; (2) inform him that he would have to pay an additional $4,000 fee; (3) inform him of the SOMTA consequences of his guilty plea; (4) object to the sentencing court's questions after Petitioner's allocution; (5) challenge the sentencing court's rejection of the defense expert's report; and (6) move to dismiss the indictment as defective under state law. (Dkt. No. 2 at 66-68)

Both the Appellate Division and the § 440.10 court addressed these claims on the merits, holding that Petitioner "failed to demonstrate that the plea bargaining process was infected by the allegedly ineffective assistance or that he entered the plea because of his attorney's allegedly poor performance," and that plea counsel "provided

meaningful representation in negotiating an advantageous plea for his client." *Reinard*, 134 A.D.3d at 1409 (internal quotation marks and brackets omitted); (SR. 506)

The clearly established law for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard is two-fold. First, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms." *Id.* at 688. Second, he must show prejudice, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the plea bargain context, prejudice requires a showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A.    <u>Affirmative Defense</u>

Petitioner claims that plea counsel should have discussed with him the possibility of raising the affirmative defense that Petitioner lacked the mental capacity to understand his crimes. (Dkt. No. 2 at 66)

The state § 440.10 court rejected this claim, reasoning that "a defense attorney is only required to explore viable defenses, and in a case that included both a controlled phone call, and a confession by defendant, one might assume that the possible defenses available to this defendant were somewhat limited." (SR. 497). Citing Petitioner's statement at sentencing ("I understand what I did was wrong"), the court

22

went on to explain that there were "legitimate and strategic reasons" for counsel not to pursue an unsupportable defense. (*Id.* at 498)

"The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea. The standard of competency in turn determines whether the attorney had a duty to disclose the availability of the affirmative defense." *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Similarly, "the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. This is an objective assessment that "is not satisfied merely by [petitioner's] testimony that he would have gone to trial had he known of the defense, . . . since a defendant's testimony after the fact suffers from obvious credibility problems." *Panuccio*, 927 F.2d at 109 (internal citations omitted).

Petitioner has not satisfied either *Strickland* prong. He claims that counsel should have advised him to go to trial and argue that Petitioner was not legally responsible for his criminal sexual acts. In support of this claim, he cites to the report of his defense expert, which states, "While [Petitioner] often endorsed thinking indicative of healthy victim empathy, there was no indication that his behavior was influenced by that

understanding" and he had "multiple cognitive distortions (Thinking Errors) related to sexual behavior." (SR. 367)

It is true that New York offers an affirmative defense for one who "lacked criminal responsibility by reason of mental disease or defect . . . [such that] he lacked substantial capacity to know or appreciate either the nature and consequences of [his] conduct; or that such conduct was wrong." N.Y. Penal Law § 40.15. But Petitioner's own statements undermine his claim of mental incompetence. As he told the sentencing court: "I know what I did is wrong . . . . I didn't mean to hurt anybody, tear the families apart . . . . It's just, it felt good . . . . I understand what I did was wrong." (SR.. 54-56) The defense report confirms his statements: he "cried throughout most of the two interviews and repeatedly apologized for the offense," admitted he "'took advantage of [the victims],'" and lacked any significant psychological problems besides "litigation related" anxiety and "low grade but long term depression . . . likely related to his poor self perception and exacerbated by marital difficulties." (SR. 365-66)

There is nothing in the record to establish that further investigation would have led to the discovery of any information that might have caused defense counsel to explore such a defense in light of the availability of the defense's forensic examination and the pre-sentence investigation. Thus, counsel has no duty to disclose an affirmative defense where the likelihood of success is poor. *See Panuccio*, 927 F.2d at 109.

### B.    Mandatory Fines; SOMTA Consequences

Petitioner claims plea counsel was ineffective for failing to inform him that New York imposes a supplemental sex offender victim fee of $1,000 for each sex offense to which he pled guilty, for a total of $4,000. *See* N.Y. Penal Law § 60.35[b]. He does not

explain how the supplemental fee would have affected his deliberations, only that he "would have never pled guilty if counsel had been truthful with me." (Dkt. No. 2 at 66-67)

As he did in his § 440.10 motion, Petitioner submits affidavits from his family members stating that counsel never explained that Petitioner would have to pay a mandatory fine. (Dkt. No. 2-2 at 54) As the § 440.10 court found, "there is no evidence to support the defendant's contention that his attorney's representation other than self-serving affidavits from his parents." (SR. 506) In rejecting Petitioner's claims of ineffective assistance, the § 440.10 court also noted that "the defendant took advantage of a favorable plea," and "faced the strong possibility of consecutive sentences on the most serious of charges involving four separate victims. The Defendant faced fifty years to life in state prison." (SR. 509) It is implausible that Petitioner would have weighed the financial impact of the guilty pleas more heavily than the significant reduction in his term of incarceration.

As to his claim counsel was ineffective for failing to inform him of the potential for civil confinement after the expiration of his sentence, it is belied by the record and without merit. (Dkt. No. 2 at 65) The § 440.10 court observed that Petitioner himself submitted correspondence from counsel advising him of the consequences of his plea and sentence, and that his attorney "provided meaningful representation in negotiating an advantageous plea for his client." (SR. 506)[6] In that letter, defense counsel advised that Petitioner was charged with two A-II felonies, and that there was a significant

---

[6] The Second Circuit has recognized that New York State's "meaningful representation" standard for judging counsel's effectiveness, set forth in *People v. Baldi*, 54 N.Y.2d 137, 147 (1981), is not contrary to the *Strickland* standard for purposes of applying § 2254(d)(1) of AEDPA. *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citations omitted)

downside to trial in light of the evidence against him. Counsel further advised that under

the plea, the maximum sentence the court could impose was 40 years, that Petitioner

would be considered a Level 3 Sex Offender requiring registration for the rest of his life,

and that he may be subject to civil commitment because there were three or more

children involved. Defense counsel recounted the conversations with his client, noting

that these matters had been discussed "in considerable detail," and that Petitioner

advised he wished to proceed with the plea. (SR. 001-002) Petitioner's claims are

unsubstantiated and without merit. *See e.g., Powers v. Lord*, 462 F. Supp. 2d 371, 381-

82 (W.D.N.Y. 2006) ("undetailed and unsubstantiated assertions [about counsel's

alleged shortcomings] have consistently been held insufficient to satisfy either

*Strickland* prong") (citation omitted).

      C.    <u>Sentencing Court's Comments</u>

Petitioner also faults counsel for failing to object to the sentencing court's

questions during the proceeding, and to its rejection of the defense expert's report. (Dkt.

No. 2 at 66-67)

At sentencing, the prosecution requested the maximum lawful penalty of 40

years of imprisonment, emphasizing several aggravating factors including petitioner's

months-long course of conduct and his repeated attempts to minimize the crimes or

blame the victims for enticing him. (SR. 041-45)

The defense presented a forensic mental health evaluation, referenced above,

which concluded that Petitioner suffered from "litigation related" anxiety, "a low grade

but long term depression . . . related to his poor self perception and exacerbated by

marital difficulties," and Pedophilia, Opposite Sex, Non-Exclusive Type. (SR. 176-83)

The report categorized Petitioner in a low to moderate risk profile and noted that men with similar risk profiles had proven recidivism rates of 1.1 – 2.2% percent over two years and 2.0 – 3.6% over four years. (SR. 180)

Petitioner also exercised his right to speak, saying "I know what I did was wrong . . . . I just hope that someday, someday I can maybe help my children understand why I did this." (SR. 054-055) The sentencing court invited Petitioner to explain this comment, asking, "What was it about these little girls that gave you these feelings?" (*Id.*) Petitioner replied, "It's just, it felt good . . . . there's nothing about little girls that turn me on . . . . I don't know why I did it. Just I, just stuff I got caught up into and I couldn't stop doing it." (*Id.* at 056) The court responded, "In my opinion . . . you are a horrific risk to re-offend, and this community is not safe as long as you are a part of it." (*Id.* at 057)

As stated above, *see* Discussion at I.A, the sentencing court did not err in its questioning of Petitioner, and was entitled to reject the defense expert's report. Further, Petitioner was sentenced under the agreed-upon terms. Any objection to the court's questions and/or treatment of the forensic report would have therefore been unsuccessful, and counsel cannot be deemed ineffective for failing to raise a meritless objection. "'The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.'" *Parks v. Sheahan*, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) (quoting *Hicks v. Ercole*, 09–CV–2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015)) (citing *United States v. Regalado*, 518 F.3d 143, 150 n. 3 (2d Cir. 2008)).

### D.    Dismissal of the Indictment

Finally, Petitioner contends that defense counsel should have moved to dismiss

the indictment. (Dkt. No. 2 at 68-74) This claim stems from the procedure employed by the parties to correct a jurisdictional defect, discussed above.

To recapitulate, Petitioner was initially charged in Town of Cambria Court with one count of Predatory Sexual Assault against a Child. The prosecution subsequently submitted an SCI charging him with two counts of Course of Sexual Conduct Against a Child in the First Degree, N.Y. Penal L. § 130.75, and two counts of Sexual Abuse in the First Degree, N.Y. Penal L. § 130.65. (SR. 034-35)

On March 26, 2010, Petitioner entered into a negotiated plea agreement under which he was permitted to plead guilty to two counts of Course of Sexual Conduct, N.Y. Penal L. § 130.75[1][a]) and two counts of Attempted Sexual Abuse in the First Degree N.Y. Penal L. §§ 110.05[6], 130.65, and would waive his right to appeal, in exchange for capping the aggregate sentence at no more than 40 years of imprisonment and dismissal of the remaining charges. (SR. 004) He pled guilty to two counts of Course of Sexual Conduct Against a Child and two counts of Attempted Sexual Abuse of a Child and executed a written waiver of the right to appeal. (SR. 013-15, 018-20) The court accepted the plea as voluntary. (SR. 015)

Shortly thereafter, the parties became aware of a defect in the proceeding: because the original felony complaint charged a Class A felony, petitioner's purported waiver of his state-law right to a grand-jury indictment on that count was invalid and the court lacked jurisdiction to accept his guilty plea to the lesser-included offense of Course of Sexual Conduct Against a Child. (SR. 021); *see* N.Y. Crim. Proc. L. § 195.10; *Trueluck*, 88 N.Y.2d at 551.

On June 8, 2010, pursuant to a joint request by the parties, Petitioner was permitted to withdraw his plea to the sexual-conduct count and plead guilty to an identical count in satisfaction of a new indictment that had been issued the previous day, pursuant to the same terms as the earlier plea. (SR. 026) Petitioner entered a guilty plea to one count of Course of Sexual Conduct, and the court accepted the plea. (SR. 032-33) The court then permitted petitioner to withdraw his previous plea to the previous count of Course of Sexual Conduct dismissed it. (SR. 033-35)

Petitioner now claims that plea counsel was ineffective for failing to object to the Niagara County indictment on the basis that, because he had already pled guilty to the felony complaint alleging the same offense, the indictment constituted a violation of the Constitution's Double Jeopardy Clause and various principles of state law. (Dkt. No. 2 at 65)

As explained earlier, *see* Discussion at II., the procedure did not violate any principle of state or federal law. Thus, counsel cannot have been ineffective in failing to object to a nonexistent violation. Rather, the procedure was agreed upon by both parties to preserve Petitioner's beneficial plea agreement that had been previously negotiated. *See Holguin v. Lee*, No. 13-CV-1492, 2014 WL 5508331, at *14 (S.D.N.Y. Oct. 31, 2014), *report and recommendation adopted*, No. 13 CIV. 1492, 2016 WL 1030129 (S.D.N.Y. Mar. 10, 2016) ("trial counsel is not expected to raise meritless objections to avoid later allegations of ineffective assistance nor would counsel's failure to do so result in any prejudice to the defendant.").  Petitioner also cannot show that he was prejudiced by counsel's alleged failure to object to the procedure as he benefitted from the guilty pleas, facing a maximum of 40 years imprisonment versus the potential

life sentence that could have been imposed had those pleas been withdrawn and he were to be found guilty after trial. *See Belle v. Sup't.*, No. 11-CV-0657, 2013 WL 992663, at *13 (N.D.N.Y. Mar. 13, 2013) ("In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence.").

      D.    <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner also seeks relief on the basis that appellate counsel was ineffective for failing to raise record-based claims that showed his plea and waiver were constitutionally invalid. (Dkt. No. 2 at 43-48) Petitioner exhausted these claims by way of two applications for writ of *error coram nobis.*

In support of the Petition, Petitioner submits correspondence from the Niagara County Public Defender advising him regarding his appeal:

> Since you waived your right to appeal, I have limited arguments to raise. I can include nothing that is not recited in the transcripts and cannot argue with the length of your sentence. I will argue that your waiver of appeal was invalid as well as the issue of illegal/harsh sentencing. I will argue that the record is insufficient to tell whether you understood what you were waiving at the time you waived your appeal.
>
> . . .
>
> Finally, I will have to review the transcripts to see if I can raise issues concerning the validity of your plea—usually counsel has to raise that issue prior to sentencing for it to be properly heard on appeal.

(Dkt. No. 2-2 at 4)

Appellate counsel ultimately did raise the argument that Petitioner's plea was null and void on the basis that he lacked understanding of the terms of the agreement with respect to sentencing. (SR. 069) As contemplated by counsel, however, the Appellate

Division ultimately found the voluntariness issue unpreserved and alternatively, without merit. *Reinard*, 134 A.D.3d at 1408. To the extent Petitioner faults counsel for not advancing additional theories of involuntariness, "[c]ounsel is not obliged to advance every nonfrivolous argument that could be made," and the failure to include a meritless argument does not constitute ineffective assistance. *Aparicio v. Artuz*, 269 F.3d 78, 95, 99 (2d Cir. 2001).

In any event, Petitioner cannot establish that he was prejudiced by his counsel's decision not to assert the claims, because Petitioner himself raised the claims in his supplemental *pro se* brief and Appellate Division denied them. *See, e.g., Harvey v. Capra*, 14-CV-00577, 2017 WL 1184222, at *7 (N.D.N.Y. Mar. 29, 2017) (holding that petitioner "cannot establish that he was prejudice[d] by his attorney's failure to raise on direct appeal arguments that he himself raised and were subsequently rejected"); *Hall v. Le Claire*, 10 CIV. 3877, 2015 WL 6395869, at *7 (S.D.N.Y. Oct. 21, 2015) (same).

Petitioner has failed to satisfy either the "prejudice" or "performance" prong of the *Strickland/Hill* inquiry. The Court therefore concludes that the state courts' treatment of Petitioner's ineffective assistance of counsel claims does not run afoul of clearly established federal law, and recommends that they be dismissed.

IV.    Unexhausted Claims

Petitioner's unexhausted claims raised in the second § 440.10 should also be dismissed. (*See* Dkt. No. 18 at 75)

First, Petitioner contends that his guilty plea was compromised because he was not advised of the disclosure requirements of N.Y. Mental Hygiene L. § 10.08(c), which provides that "the attorney general shall be entitled to request from any agency, office,

department or other entity of the state, and such entity shall be authorized to provide upon such request, any and all records and reports relating to the respondent's commission or alleged commission of a sex offense, the institutional adjustment and any treatment received by such respondent, and any medical, clinical or other information relevant to a determination of whether the respondent is a sex offender requiring civil management." *Id.* As stated earlier, such a collateral consequence need not be disclosed to a defendant before he pleads guilty. *See, e.g., United States Currency*, 895 F.2d at 915-16.

Next, Petitioner claims that his plea is invalid because the County Court failed to keep its sentencing promise that it would not impose post-release supervision in excess of 20 years. No such promise was made on the record. To the contrary, Petitioner's first waiver of appeal explicitly set forth that the post-release supervision term was five to 20 years on each B violent felony and three to 10 years on each E nonviolent felony. (SR. 018) Further, the transcript of the June 8, 2010, plea proceeding reveals the following exchange:

| | |
|---|---|
| The Court: | I believe that this court has placed a forty-year cap on any sentence that I impose with respect to this indictment and the Superior Court Information plea; do you understand? |
| Petitioner: | Yes, your Honor. |
| The Court: | Other than that[,] has any promise been made to you as to what your sentence will be? |
| Petitioner: | No, your Honor. |
| The Court: | That's a forty-year cap plus post-release supervision; do you understand? |
| Petitioner: | Yes, your honor. |

(SR. 031) The County Court then sentenced Petitioner to 16 years determinate plus 20 years of post-release supervision on each of the B violent felonies, consecutive; and to four years determinate plus 10 years of post-release supervision on each of the E felonies, consecutive to one another and consecutive to the B felonies. (*Id.* at 057)

Accordingly, Petitioner's claim that he only recently learned of the consecutive terms of post-release supervision (*see* Dkt. No. 18 at 80-81), is spurious. "A federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation." *Morgan v. Lee*, No. 11-CV-390, 2012 WL 5336167, at *8 (W.D.N.Y. Oct. 26, 2012) (internal quotation marks and citation omitted). In any event, "there are a number of cases noting that there is no Supreme Court precedent holding that a defendant who pleads guilty must be made aware of even the fact that postrelease supervision may be imposed." *Monk v. Racette*, No. 14CV2967, 2017 WL 2984129, at *5 (S.D.N.Y. July 12, 2017) (collecting cases).

Finally, his claim that he was not apprised of the SOMTA civil commitment consequences was raised and rejected multiple times by the state courts. As discussed above, this claim is meritless. *See* Discussion, *supra* at III.B. and IV.B.

For these reasons Petitioner's unexhausted claims should be dismissed. *See* 28 U.S.C. § 2254(b)(2).

V.    Non-cognizable Claims

A.    Post-Conviction Procedures

Petitioner challenges New York's post-conviction relief process as inadequate to provide meaningful review. (Dkt. No. 48-54) New York's statutory framework for adjudicating petitioner's claims is not itself a basis for Petitioner's continued

imprisonment, so any flaw in that framework is not within the limited scope of the writ to act as "an attack by a person in custody upon the legality of that custody[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Green v. Walsh*, 03 Civ. 0908, 2006 WL 2389306, at *20 (S.D.N.Y. Aug. 17, 2006) ("There is no constitutional provision that even requires a state to grant post-conviction review, and, therefore, most federal courts have rejected due process claims arising out of the conduct of state courts in post-conviction proceedings, holding that such claims are also not cognizable on habeas review."); *Cruz v. Smith*, No. 05 Civ. 10703, 2010 WL 582348, at *28-29 (S.D.N.Y. Feb. 17, 2010) (dismissing petitioner's claim that he was deprived of his due process rights when the trial court denied his § 440.10 motion). His related argument that he was improperly denied right to counsel in the § 440.10 proceedings (*see* Dkt. No. 2 at 54-59; SR. 273), likewise fails, as there is no constitutional right to counsel in connection with that collateral, post-conviction proceeding. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Casado v. Sheehan*, No. 14-CV-00742, 2017 WL 2334885, at *3 (W.D.N.Y. May 30, 2017) (rejecting habeas petitioner's contention that he was entitled to an attorney to represent him in § 440.10 proceedings).

### B.    Sentencing Challenge

Petitioner argues that sentence is in violation of the Eighth Amendment prohibition against cruel and unusual punishment. (Dkt. No. 2 at 59-66) The Second Circuit has stated that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *see Willard v. New York*, No. 08-CV-1525, 2009 WL 4823365, at *6 (E.D.N.Y. Dec. 4, 2009) ("A sentence of imprisonment which is

within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense.") (citations omitted); *Jackson v. Lacy*, 74 F. Supp. 2d 173, 181 (N.D.N.Y. 1999) ("It is well-settled . . . that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law.") (citation omitted). Petitioner makes no argument that the sentence he received was outside the range permitted under state law.

C.    Sex Offender Victim Fee

Petitioner appears to challenge N.Y. Penal L. § 60.35[1][b], which imposes a supplemental sex offender victim fee on anyone convicted of a sexual offense, on Equal Protection grounds. (Dkt. No. 2 at 74-75)

As courts in this Circuit have found, Petitioner's claim is not cognizable on federal habeas review. *See Gainey v. Ward*, No. 16-CV-6560 CJS, 2019 WL 6608844, at *4 (W.D.N.Y. Dec. 5, 2019) ("In this regard, even where the petitioner is physically in custody, he cannot use a habeas petition to challenge a non-custodial aspect of his sentence, such as the imposition of a fine or restitution."); *Munck v. Amoia*, No. 16-CV-0118, 2016 WL 4275737, at *6 (N.D.N.Y. Aug. 12, 2016) (challenge to DNA sample fee was not cognizable on habeas review); *Hendricks v. Senkowski*, No. 92-CV-0320, 1993 W L 33417 at *4 (S.D.N.Y. Feb. 4, 1993) ("Since petitioner is not 'in custody' because of his non-payment, or inability to pay, the mandatory assessment fee, habeas corpus relief is unavailable.") (citing 28 U.S.C. § 2254(a)).

Accordingly, Petitioner's remaining claims are not properly before this Court and should be dismissed.

## CONCLUSION

For the reasons stated above, the Court recommends that Petitioner's application for a stay and abeyance (Dkt. No. 18) be DENIED, and that the Petition for Habeas Corpus (Dkt. No. 1) also be DENIED. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court recommends that no certificate of appealability be issued. *Coppedge v. United States,* 369 U.S. 438 (1962).

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 USC § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Rule 72(a)(3).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTTICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn*, 474 U.S. 140 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d. Cir. 1995); *Wesolak v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to

the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.

So Ordered.

United States Magistrate Judge
Western District of New York

Dated:        August 3, 2020
              Buffalo, New York