UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD REINARD,

              Petitioner,

    v.                                                    17-CV-708-LJV-MJR
                                                       DECISION & ORDER

EARL BELL,[1]

              Respondent

_____

## INTRODUCTION

On July 26, 2017, the *pro se* petitioner, Donald Reinard, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his convictions in the county court of Niagara County, New York, were obtained in violation of his constitutional rights.  Docket Item 1.  On March 19, 2018, the respondent answered the petition. Docket Item 10.  On August 20, 2018, Reinard asked the Court to stay his habeas petition and hold it in abeyance so that he could exhaust two unexhausted claims

---

[1] The appropriate respondent in a habeas corpus petition is "the person" having custody over the petitioner, 28 U.S.C. §§ 2242, 2243—that is, the person who "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary," *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).  Here, that is the superintendent of the Clinton Correctional Facility, Earl Bell.  The Court therefore amends the petition, *sua sponte*, to name Superintendent Bell as the respondent.  *See Berrettini v. Federal Bureau of Prisons*, 2019 WL 1974319, at *3 (S.D.N.Y. July 8, 2009) (finding that the liberal construction applied to *pro se* complaints coupled with Federal Rules of Civil Procedure 1 and 15(d) call for *sua sponte* amendment where the incorrect respondent was named).

through a second motion under New York Criminal Procedure Law ("CPL") section 440.10[2] ("second 440.10 motion").[3]  Docket Item 18.

On November 12, 2019, this Court referred the case to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B).  Docket Item 20.  On January 3, 2020, the respondent responded to the motion for a stay and abeyance.  Docket Item 23.  And on January 29, 2020, Reinard replied.  Docket Item 24.

On August 3, 2020, Judge Roemer issued a Report and Recommendation ("R&R"), finding that both Reinard's motion for a stay and abeyance and the habeas petition itself should be denied.  Docket Item 25.  On October 16, 2020, Reinard

---

[2] Reinard had already brought a post-conviction motion under CPL section 440.10 ("first 440.10 motion").  In that motion, Reinard claimed that (1) his plea procedure violated due process, State Record at 296 (memorandum in support of first 440.10 motion); (2) his sentence violated the Eighth and Fourteenth Amendments, *id.* at 305; (3) New York's mandatory fines and civil confinement statutes are unconstitutional, *id.* at 310; (4) the ineffective assistance of his attorney rendered his plea invalid, *id.* at 315; (5) he was entitled to counsel during his section 440.10 proceeding, *id.* at 329; and (6) New York's post-judgment appeal statutes are unconstitutional and violate due process as applied to him, *id.* at 331.

[3] In the motion for a stay and abeyance, Reinard also requested an expansion of the state court record; the appointment of counsel; an extension of time to reply to the motion for a stay; an evidentiary hearing on his habeas claims and his request to expand the record; and a hearing on the adequacy of certain New York State criminal procedures.  Docket Item 18.

objected to the R&R.[4]  Docket Item 34.  The respondent did not respond to the objection, and the time to do so now has expired.  *See* Docket Item 35.[5]

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendations to which a party objects.  *Id.*

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the motion for a stay and response to the motion, the objection, and all materials submitted to Judge Roemer.  Based on that *de novo* review, the Court accepts and adopts Judge Roemer's recommendation to deny Reinard's motion for a stay and abeyance and to deny his habeas petition in its entirety.[6]

---

[4] Reinard objected only to Judge Roemer's findings that the motion for a stay and abeyance should be denied, that Reinard's right to be protected against self-incrimination was not violated, and that his guilty plea did not violate the Double Jeopardy Clause.  *See* Docket Item 34.  Because Reinard is proceeding *pro se*, however, the Court liberally construes his objection to include each of the findings in the R&R.  *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of *pro se* litigants must be construed liberally and interpreted to raise the strongest arguments that they suggest).

[5] On November 30, 2020, Reinard moved for an extension of time to reply to the response to his objection.  Docket Item 36.  Because the respondent did not respond to Reinard's objection, that motion is denied as moot.  On February 19, 2021, Reinard moved for summary judgment.  Docket Item 37.  Because this Court accepts and adopts Judge Roemer's recommendation to deny the habeas petition, that motion is denied as moot as well.

[6] The Court assumes the reader's familiarity with the facts alleged in the petition, *see* Docket Item 1; in the memorandum of law accompanying the petition, *see* Docket Item 2; in the motion for a stay, *see* Docket Item 18; and in the R&R, *see* Docket Item 25, and will refer only to the facts necessary to explain its decision.

## FACTUAL BACKGROUND

Reinard initially was charged with one count of predatory sexual assault against a child, Victim "S," under New York Penal Law ("Penal Law") section 130.96.  *See* Docket Item 2-2 at 47, 49, 50, 56.  He later was charged with four additional counts: two counts of course of sexual conduct in the first degree, one against the same child and one against Victim "J," under Penal Law section 130.75; and two counts of sexual abuse in the first degree, one against Victim "M" and one against Victim "P," under Penal Law section 130.65.  *See id.* at 47, 49, 50, 56-58.

On March 26, 2010, Reinard pleaded guilty to two counts of course of sexual conduct in the first degree (Victims "S" and "J") under Penal Law section 130.75(1)(a) and two counts of attempted sexual abuse in the first degree (Victims "M" and "P") under Penal Law sections 110.5(6) and 130.65.  *Id.* at 56-58; *see also* State Record at 18-19, 60-61.  Reinard also signed a waiver in which he waived his right to appeal in exchange for capping his sentence at 40 years' imprisonment, 60 years' post-release supervision, and dismissal of the remaining charges.  State Record at 18-19, 60-61; *see also* Docket Item 2-2 at 48.

The parties then learned that their agreement, and the subsequent plea, were procedurally defective as to one count.  State Record at 21 (Letter to Reinard's attorney, George V.C. Muscato, Esq., from assistant district attorney Elizabeth R. Donatello, dated May 27, 2010).  More specifically, because Reinard originally was charged with a Class A felony as to Victim "S," he could not waive his right to indictment on that count, and the court therefore lacked jurisdiction to accept Reinard's plea to the lesser-

included offense of course of sexual conduct against Victim "S."  *See id.*; *see also id.* at 60.

To cure the defect, both sides agreed that Reinard would withdraw his guilty plea to the defective count and plead guilty to an identical count brought under a new indictment.  *Id.* at 60-61*.*  Therefore, the case was presented to a grand jury, and on June 8, 2010, an indictment charged Reinard with course of sexual conduct against a child in the first degree.  *Id.* at 22.  On the same day, Reinard pleaded guilty to the new charge and withdrew his previous guilty plea.  Docket Item 2-2 at 70-72.  He was sentenced to the maximum contemplated under his plea agreement—40 years' imprisonment and 60 years' post-release supervision, *see* State Record at 18, 60; Docket Item 2-2 at 95—as well as $4,425 in fees, *id.*

Reinard appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department, filing his brief on March 20, 2015.  State Record at 63.  On December 23, 2015, the Appellate Division affirmed Reinard's conviction, *People v. Reinard*, 134 A.D.3d 1407, 22 N.Y.S.3d 270 (4th Dep't 2015); the court later denied leave to reargue, *People v. Reinard*, 138 A.D.3d 1514, 29 N.Y.S.3d 226 (4th Dep't 2016).  On May 17, 2016, the New York Court of Appeals denied leave to appeal. *People v. Reinard*, 27 N.Y.3d 1074, 60 N.E.3d 1210 (2016).  Reinard then sought review by the United States Supreme Court, but on October 31, 2016, the Court denied certiorari.  *Reinard v. New York*, 137 S. Ct. 392 (2016).

In the meantime, Reinard also moved in Niagara County Court to vacate the judgment of conviction under CPL section 440.10.  State Record at 274.  On September 1, 2015, that 440.10 motion was denied, *id.* at 503; Reinard moved to reargue, *id.* at

588, and that motion was denied on December 21, 2015, *id.* at 606.  He also asked for leave to appeal the denial of the 440.10 motion, *id.* at 571, and the denial of his request for reargument, *id.* at 609; those requests were denied on July 1, 2016, *id.* at 644.

On October 5, 2016, Reinard petitioned for a writ of *error coram nobis* in the Appellate Division, *id.* at 645; the court denied that petition on December 23, 2016, *People v. Reinard*, 145 A.D.3d 1658, 42 N.Y.S.3d 923 (4th Dep't 2016).  Reinard then sought leave to appeal, but that was denied as well.  State Record at 672.

On July 26, 2017, Reinard petitioned this Court for a writ of habeas corpus.  *See* Docket Item 1.  About ten months later, he filed a second application for a writ of *error coram nobis*, Docket Item 18 at 52, which was denied by the Appellate Division on June 29, 2018, *People v. Reinard*, 162 A.D.3d 1776, 76 N.Y.S.3d 443, (4th Dep't 2018).  Reinard then sought leave to appeal, which also was denied.  *People v. Reinard*, 32 N.Y.3d 1114, 115 N.E.3d 638 (2018).

## DISCUSSION

I.   **MOTION FOR STAY AND ABEYANCE**

A state prisoner generally may obtain federal habeas relief only after exhausting his claims in state court.  28 U.S.C. §§ 2254(b)(1), (c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. 845.  A petitioner can exhaust claims either through direct appeal or by a collateral proceeding, such as one under CPL section 440.10.  *See Daye v. Atty Gen. of State of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982).

6

When a habeas corpus petition includes both exhausted and unexhausted claims (a "mixed petition"), the reviewing district court usually should dismiss the petition so that the state courts can decide the unexhausted issues. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). But when certain requirements are met, a district court may stay a mixed petition and hold it in abeyance so that the petitioner can return to state court and exhaust the unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

Reinard moved for such a stay and abeyance here. More specifically, Reinard asked this Court to stay his habeas petition so that he could pursue his second 440.10 motion raising two additional reasons why his guilty plea was invalid:[7] (1) prior to his plea, he was not informed that under Article 10 of the New York Mental Hygiene Law ("Article 10"),[8] he was waiving confidentiality with mental health professionals ("disclosure requirement")[9]; and (2) the disclosure requirement renders Article 10

---

[7] The second 440.10 motion also argued that Reinard's plea was invalid because the sentencing court broke its promise that post-release supervision would not exceed 20 years. Docket Item 18 at 80. Reinard, however, did not seek to incorporate that argument into his habeas petition. *See id.* at 22. Regardless, the record shows no such promise by the sentencing court, *see* Docket Item 2-2 at 69; on the contrary, Reinard's appeal waivers explicitly noted the possibility of "between 5 and 20 years of post[-]release supervision on <u>each</u> 'B' violent [felony] and 3 to 10 years on <u>each</u> 'E' non-violent [felony]," *see* State Record at 18 (emphasis in original); *see also id.* at 60.

[8] This statute also is known as the Sex Offender Management and Treatment Act ("SOMTA").

[9] Reinard specifically challenges section 10.08(c), which provides that in deciding whether a sexual offender should be civilly committed, the Article 10 case review panel and the New York State Attorney General may request "any and all records and reports relating to the respondent's commission or alleged commission of a sex offense" and "any treatment received . . . to [] determin[e] [] whether the respondent is a sex offender requiring civil management." N.Y. Mental Hyg. L. § 10.08(c). After Reinard's period of imprisonment concludes, therefore, the Article 10 panel will review his criminal and psychological history and interview him to determine whether he suffers from a "mental abnormality" that predisposes him to an inability to control his behavior—indicating a

unconstitutional as applied to him.  Docket Item 18 at 22, 77-80.  Judge Roemer found

that Reinard's motion for stay and abeyance should be denied.  Docket Item 25 at 9.

This Court agrees.

Before a petitioner is entitled to a stay and abeyance, the petitioner must show

that (1) there was "good cause" for his failure to exhaust his claims in state court before

bringing the federal habeas petition; (2) the unexhausted claims are "potentially

meritorious"; and (3) the petitioner did not engage in dilatory litigation tactics—that is, he

did not intend to cause delay.  *Sherrod v. Artus*, 2016 WL 3459539 at *2 (W.D.N.Y.

June 24, 2016) (citing *Rhines*, 544 U.S. at 277-78).  When those requirements are not

met, the request for a stay should be denied and the "writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available" in state court.  *See Rhines*, 544 U.S. at 277 (citing 28 U.S.C.

§ 2254(b)(2)).  Here, Reinard has not satisfied any of those factors for either of his

unexhausted claims.

First, Reinard has not demonstrated good cause for his failure to bring either

claim prior to filing his habeas petition.  Indeed, before he filed the habeas petition,

Reinard already had challenged the constitutionality of Article 10 and how that statute

affected his plea no less than three times:  in his *pro se* supplemental brief on direct

appeal, State Record at 144-45 (arguing that the lack of specialized treatment facilities

violates his right to equal protection and is unconstitutional as applied to him); in his

first 440.10 motion, *id.* at 311-13 (arguing the same); and in his motion to reargue his

---

likelihood he will reoffend.  *See In re Marcell A.*, 49 Misc. 3d 859, 865, 14 N.Y.S. 3d
894, 898 (Sup. Ct. Suffolk Co. 2015).

first 440.10 motion, *id.* at 534-37 (arguing that Article 10 is cruel and unusual punishment and violates his due process and equal protection rights).[10]  Reinard could have raised the issues he seeks to raise now in any of those proceedings, but he did not.

Reinard asserts that he has good cause for failing to bring these claims sooner because the respondent in this habeas petition omitted documents from the state court record, "making it impossible for [Reinard] to properly respond to the [answer]."  Docket Item 34 at 12-13.  He asserts that the record in this case was incomplete and needs to be supplemented.  *Id.* at 14-15.  He notes that he filed his second 440.10 motion within the statutory time limits, *id.* at 13, 16, and he argues that his claims are meritorious, *id.* at 17.  But he never says why he did not challenge Article 10's disclosure requirement or how it affected his plea *before* bringing his habeas petition—for example, in any one of his prior attacks on the constitutionality of Article 10.  And without such an explanation, Reinard has not provided good cause for the delay.

Second, Reinard also has not shown that his claims are "potentially meritorious." *See Rhines*, 544 U.S. at 278.  With respect to Reinard's claim that the disclosure requirement rendered his plea invalid, for example, Judge Roemer correctly found that Reinard knowingly and intelligently entered his guilty plea while being represented by counsel throughout the plea-bargaining process.  *See infra*; *see also* Docket Item 25 at

---

[10] After filing the habeas petition, Reinard also challenged the constitutionality of Article 10 in his second application for a writ of *coram nobis*.  Docket Item 18 at 55-57 (arguing that Reinard was denied due process because he did not waive his privilege with mental health professionals).  That application was denied, *Reinard*, 162 A.D.3d at 1776, 76 N.Y.S.3d at 443, as was leave to appeal, *Reinard*, 32 N.Y.3d at 1114, 115 N.E.3d at 638.

12.   During the plea colloquies, Reinard repeatedly stated that he had been advised of the risks and benefits associated with the plea offer and that he understood he was giving up certain rights.  Docket Item 2-2 at 53-55 (confirming Reinard understood that he was waiving his rights and that his sentence could be 40 years plus post-release supervision).  Moreover, Reinard's attorney specifically advised him in a letter dated March 25, 2010, that as a result of accepting the plea offer, Reinard would be a "Level 3 Sex Offender" and could "be subject to civil confinement."  State Record at 1 (Letter to Reinard from George V.C. Muscato, Esq., dated Mar. 25, 2010).  So as a matter of fact, Reinard clearly knew about the direct consequences of his plea as well as the possible collateral consequences of civil confinement.

Reinard's plea was not involuntary simply because he may have been unaware of exactly how a possible civil confinement proceeding might work.  *See Brady v. United States*, 397 U.S. 742, 757 (1970) (A plea is not involuntary because the defendant "did not correctly assess every relevant factor entering into his decision.").  Indeed, Reinard's plea is valid even if he "understood the consequences [of the possibility of future civil confinement] . . . only in a fairly rudimentary way," *see Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).  So his argument that his plea is invalid because he did not understand that he might waive mental health confidentiality as part of a possible civil confinement proceeding plainly lacks merit.

The same is true of Reinard's argument that because he was not informed of Article 10's waiver component, the statute is unconstitutional.  *See* Docket Item 18 at 22.  Reinard does not suggest why Article 10 is unconstitutional; on the contrary, he asserts only that because he did not know about the waiver component, for some

reason the statute is unconstitutional as applied to him.  *Id.* at 77.  What is more, several state courts already have rejected Reinard's claims that Article 10 is unconstitutional either on its face or as applied to him.  *See Reinard*, 134 A.D.3d at 1409, 22 N.Y.S.3d at 272 (rejecting Reinard's facial constitutional challenge to Article 10 on direct appeal); Docket Item 2-1 at 14-17 (denying Reinard's first 440.10 motion, which included his argument that Article 10 violated his equal protection rights); *Reinard*, 162 A.D.3d at 1776, 76 N.Y.S.3d at 443 (denying Reinard's second *coram nobis* application, in which Reinard argued that failure to waive privileges on the record is a violation of his due process rights).  Because those decisions are not contrary to clearly established federal law, his habeas petition raising those issues lacks merit.  *See* 28 U.S.C. § 2254(d); *Nunez v. Conway*, 923 F. Supp. 2d 557, 563 (S.D.N.Y. 2013); *see also infra* at 12-13.  And to the extent that Reinard is suggesting that his civil commitment might eventually violate his rights, his claim is decades away from being ripe.  *See* N.Y. Mental Hyg. L. § 10.05(b) (Article 10 proceedings begin "[w]hen it appears to an agency with jurisdiction that a person who may be a detained sex offender is nearing an anticipated release from confinement.").

Finally, as Judge Romer noted, Reinard's "repetitive and voluminous filings" in federal and state court "raise[] concerns" about dilatory litigation tactics.  Docket Item 25 at 9.  More specifically, Reinard's motion for stay, Docket Item 18, was filed one year and one month after he brought his habeas petition, Docket Item 1; five months after the respondent answered the habeas petition, Docket Item 10; and after Reinard filed two motions seeking extensions of time to respond, Docket Items 13, 16.  Waiting until after the respondent has answered the petition before seeking a stay "might be a sign of a

dilatory litigation practice," *see Fernandez v. Artuz*, 2006 WL 121943, at *7 (S.D.N.Y. Jan. 18, 2006), and that is especially so under the additional circumstances present here.  Based on the timing of Reinard's request for a stay and abeyance, this Court shares Judge Roemer's concern about dilatory tactics.

In sum, Reinard has failed to satisfy the *Rhines* factors.  His motion for a stay and abeyance is therefore denied.

## II.   HABEAS CLAIMS

Reinard's habeas petition alleges that (1) his guilty plea was involuntary,[11] Docket Item 2 at 34; (2) his plea violated the Double Jeopardy Clause, *id.* at 68; (3) his plea counsel was ineffective, *id.* at 43; and (4) his appellate counsel was ineffective, *id.* at 66.  Reinard also brings several claims that are not cognizable on habeas review: that New York's system for challenging guilty pleas is unconstitutional, *id.* at 49; that the procedures used to rectify his plea violated New York law, *id.* at 70, 73; that he has a right to counsel to collaterally attack his conviction, *id.* at 54; and that the fines associated with his sentence violate the Equal Protection Clause, *id.* at 74.  This Court agrees with Judge Roemer that none of these grounds warrants habeas relief.

---

[11] The Respondent argues that several of Reinard's claims, including the invalidity of his plea, are procedurally barred.  *See* Docket Item 9 at 13, 25, 42.  This Court, however, agrees with Judge Roemer that due to the "convoluted procedural history of this case," it is appropriate to resolve these claims on the merits.  *See* Docket Item 25 at 10 (citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involve[s] complicated issues of state law") (citation omitted)); *see also Anderson v. Graham*, 2018 WL 1428249, at *2 (W.D.N.Y. Mar. 22, 2018) (declining to "resolve the issues raised by [the r]espondent's assertion of the defenses of non-exhaustion and procedural default" and proceeding to decide the claims on the merits).

Because the "state court has adjudicated [Reinard's] claims on the merits, [his] claims [are] evaluated under the standard of review set forth in 28 U.S.C. § 2254(d)." *Nunez*, 923 F. Supp. 2d at 563.  That standard is a steep hill to climb:  a federal court "shall not" grant a state prisoner's habeas petition based on a claim adjudicated on the merits in state court "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### A.   Voluntariness of Plea

#### 1.  Self-incrimination at Sentencing

Reinard first argues that his plea was involuntary because the court did not inform him that by pleading guilty, he would waive his Fifth Amendment right against self-incrimination at sentencing.  Docket Item 2 at 35.  Reinard argues that questions asked by the court at sentencing compelled him to answer to his disadvantage.  *Id.* at 35-36.  And he claims that he therefore was forced to incriminate himself in violation of his Fifth Amendment right.  *Id.* at 37-39.

The Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  That privilege extends through a defendant's sentencing hearing.  *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (Efforts to compel a person to "testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.").  But once a defendant voluntarily decides to speak at sentencing, a sentencing court may consider those statements, including the "defendant's remorse, or lack thereof, in determining a

sentence." *See Geraci v. Senkowski*, 23 F. Supp. 2d 246, 267 (E.D.N.Y. 1998); *United States v. Gamble*, 969 F.3d 718, 724 (7th Cir. 2020) ("[A] sentencing judge may consider a defendant's statements—and draw inferences from those statements—in considering [] sentencing factors and imposing an appropriate sentence.  If the defendant has broken [his] silence, there is no privilege.").

The sentencing court did not compel Reinard to speak here.  In fact, the record shows quite the opposite—that Reinard volunteered to make a statement.  *See* Docket Item 2-2 at 92 (the sentencing court first asking, "Mr. Reinard, do you have anything you want to say?" and Reinard replying, "Yes, your Honor, I do.").  Reinard argues that the court "demanded" he answer questions about his motive while he sat "crying" and "shaking," Docket Item 34 at 25-26, and that when he was unable to provide a satisfactory answer, the judge punished him with a longer sentence, Docket Item 2 at 33-34.  But at best, that is a self-serving mischaracterization of what occurred.

After Reinard volunteered that there was "no excuse for what [he] did," and that it was "wrong" and "unforgiveable," the judge said, "[y]ou have to tell me why you did it." Docket Item 2-2 at 92-93.  Reinard seizes on that unfortunate choice of words by the court to argue that he was compelled to speak.  Docket Item 2 at 33.  But a reading of the transcript makes clear that the court was not demanding that Reinard answer; rather, the court simply was struggling to understand why Reinard committed the heinous sexual offenses that Reinard admitted hurt "good, loving people" and a family that he "love[d] . . . so much."  Docket Item 2-2 at 92-94.  So, contrary to Reinard's argument, the court did not compel him to incriminate or offer evidence against himself.

And Reinard did not do so.  In fact, he answered the judge by saying that he did not know why he did what he did:  "I wish I knew."  *Id.* at 93.  "I wish I knew more. . . . I have no good explanation . . . . I don't know why I did it."  *Id.* at 94.

Indeed, the colloquy between Reinard and the court was limited to what Reinard had volunteered to speak about and about which he therefore had waived the privilege. *See id.* at 92-94; *see also U.S. ex rel. Carthan v. Sheriff, City of N.Y.*, 330 F.2d 100, 102 (2d Cir. 1964) ("Once he waives his privilege against self-incrimination, a witness may not withdraw his waiver to prevent matters which he has already gone into from being explored in greater detail.") (citing *Brown v. United States*, 356 U.S. 148 (1958); *Rogers v. United States*, 340 U.S. 367 (1951)).  As Judge Roemer correctly noted, the court's request for an explanation of Reinard's conduct therefore "was not a compulsion to incriminate himself."  *See* Docket Item 25 at 14.  And that is especially so because the court's request came after—and was prompted by—Reinard's observation that what he did was "wrong" and "unforgivable."  *See* Docket Item 2-2 at 92-93.  For all those reasons, Reinard's argument that he was forced to waive his right to be protected against self-incrimination lacks merit.

### 2.  SOMTA Consequences

Reinard also challenges the validity of his plea on the ground that he was not informed of various SOMTA consequences; more specifically, he argues that because he did not know about the possibility of civil confinement—including Article 10's waiver component—or the $4,000 he would owe in victim fees, his plea was not fully informed. Docket Item 2 at 43.

15

"A plea is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'" *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (citing *Brady*, 397 U.S. at 755). "The Supreme Court has not defined which consequences of a guilty plea are 'direct' and therefore must be disclosed to the defendant, and which consequences are collateral and need not be conveyed to the defendant prior to his plea." *Id.* But the Second Circuit has defined "direct consequences" as those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment" and has designated all other consequences as collateral. *Id.* (citing *United States v. United States Currency in Amount of $228,536.00*, 895 F.2d 908, 915 (2d Cir. 1990)).

Generally, the collateral consequences of a guilty plea "need not be explained to the defendant in order to ensure the plea is voluntary." *See United States Currency*, 895 F.2d at 915. The possibility of civil confinement is a collateral consequence. *United States v. Youngs*, 687 F.3d 56, 61 (2d Cir. 2012). Therefore, the state court was not required to ensure that Reinard knew about the possibility of civil confinement.

But the record shows that Reinard knew very well about that possibility. Indeed, Reinard's attorney advised him—both orally and in writing—that because of the nature of the conviction, Reinard faced possible civil commitment after his term of imprisonment concluded. State Record at 1 (Letter to Reinard from George V.C. Muscato, Esq., dated Mar. 25, 2010: "because there are three or more children involved, you may be subject to civil commitment which I explained to you in great detail."). Reinard's signed waivers also alerted him to the "potential for post[-]release confinement as a result of civil commitment proceedings" under "Article 10." *Id.* at 19

16

(appeal waiver of Mar. 26, 2010); *id.* at 61 (appeal waiver of June 8, 2010).  Reinard's

claim that he did not know about the risk of civil confinement therefore is without merit.

Reinard's argument that his plea was invalid because he was unaware of the

mandatory victim fees likewise lacks merit.  *See* Docket Item 2 at 43.  The letter from

Reinard's attorney states that he and Reinard "discussed . . . in considerable detail all of

the various options, penalties, expectations, and concerns" associated with his plea.

State Record at 2.  So Reinard may well have been aware that he might be required to

pay victims fees.

But even if he had not been aware, that still would not warrant habeas relief.  In

deciding Reinard's motion to reargue the motion to vacate his conviction, the state court

explicitly rejected his argument that his plea was invalid because he was not told about

the supplemental victim fees.  *See* Docket Item 2-1 at 20.  Citing the New York Court of

Appeals decision in *People v. Hoti*, 12 N.Y.3d 742, 906 N.E.2d 373 (2009), the court

noted that "fees are not components of a sentence" and that the failure to explicitly

address victim fees "prior to entry of the plea [does] not deprive [a] defendant of the

opportunity to knowingly, voluntarily[,] and intelligently choose among alternative

courses of action."  *Id.*  Because there is no clearly established federal law to the

contrary, the failure to explicitly address fees does not entitle Reinard to habeas relief.

*See* 28 U.S.C. § 2254(d)(1) (A habeas petition shall not be granted based on an issue

about which a state court already has ruled on the merits unless the state court's

decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law.").

This Court also agrees with Judge Roemer that Reinard's "claim that he would have elected to go to trial, facing a probable guilty verdict with the possibility of a life sentence, had he known of the fee impositions is dubious." *See* Docket Item 25 at 16 (footnote and citation omitted). The suggestion that the possibility of $4,000 in fees would have tipped the balance in a case where decades of incarceration were at stake is more than self-serving; it borders on the frivolous. Reinard's claim about victim fees fails for that reason as well. *See Morgan v. Lee*, 2012 WL 5336167, at *9 (W.D.N.Y. Oct 26, 2012) ("[A] federal court may not grant habeas relief based upon a petitioner's unsubstantiated conclusions, opinions, or speculation.").[12]

### 3. Dr. Heffler's Report

Finally, Reinard argues that his plea was invalid because he did not know that the sentencing court would reject Dr. Heffler's conclusion that Reinard presented a low recidivism risk. Docket Item 2 at 30. Reinard suggests that the sentencing court either always intended to reject Dr. Heffler's report or rejected it after Reinard failed to answer questions to the court's satisfaction at the sentencing hearing. *See id.* at 34, 45. But even if Reinard is correct, he still is not entitled to habeas relief.

Of course, a defendant is not entitled to have a court accept and agree with his sentencing submissions. *See Pepper v. United States*, 562 U.S. 476, 480 (2011) ("[S]entencing judges exercise a wide discretion in the types of evidence they may consider when imposing [a] sentence[,] and [] highly relevant—if not essential—to the

---

[12] As explained in more detail above, Reinard's argument that his plea was invalid because he did not understand that he might waive mental health confidentiality in a future Article 10 proceeding, as well as his argument that Article 10 is unconstitutional as applied to him, also lack merit. *See supra* at 10-11.

selection of an appropriate sentence is the possession of the fullest information possible.") (internal quotations and marks omitted).  For that reason alone, Reinard has not stated a viable claim.

What is more, the record simply does not support Reinard's factual assertions; rather, it shows that the sentencing court had good reason to reject Dr. Heffler's report. *See* Docket Item 2-2 at 83-84.  The court learned at sentencing that Dr. Heffler's conclusion that Reinard posed a low recidivism risk was premised on the false understanding that Reinard had "never penetrated" the victims.  *Id.*; *see also id.* at 34 (Dr. Heffler's report stating that Reinard "denied that he ever vaginally penetrated the children.").  Contrary to Dr. Heffler's understanding, at least one of Reinard's victims "sa[id] he did, over and over again."  *Id.* at 83.  Because Dr. Heffler apparently misunderstood the extent of the abuse, it was perfectly reasonable for the sentencing court to reject his recommendation.  *Compare id.* at 76-83 (Sentencing Tr., detailing the extent of abuse), *with id.* at 33-40 (Dr. Heffler's report, lacking significant portions of the abuse described by the victims and entered into the record).  Reinard's argument therefore misses the mark.

### B.    Double Jeopardy

Reinard also argues that the procedure used to rectify a jurisdictional defect in his guilty plea violated the Double Jeopardy Clause.  Docket Item 2 at 68-69.  As noted above, after prosecutors discovered the defect in Reinard's plea to the count involving Victim "S," the parties agreed that Reinard would withdraw his guilty plea on the defective count, accept the same plea offer which would be renewed and to which he had agreed, and plead guilty to a similar count after indictment.  *See* State Record at

21.   The grand jury issued an indictment charging Reinard with one count of course of sexual conduct against Victim "S."  *Id.* at 22-23.  Reinard signed an appeal waiver acknowledging the error and agreeing to plead guilty to the same charge to which he had previously pleaded guilty.  *Id.* at 60-61.  Reinard then pleaded guilty under the indictment and withdrew his original plea regarding Victim "S."  *Id.* at 32-34.

Because he pleaded guilty to the new charge before he withdrew his first guilty plea, Reinard argues that he was simultaneously adjudicated guilty on two separate counts for identical conduct; therefore, he reasons, he was twice placed in jeopardy for a single crime in violation of his rights.  Docket Item 2 at 68-69.  Judge Roemer rejected that argument, finding that the jurisdictional defect rendered Reinard's first guilty plea invalid and, because that plea was invalid, jeopardy did not attach.  Docket Item 25 at 21.  This Court agrees.

But even if there had been no jurisdictional defect, jeopardy still would not have attached to the March 26, 2010 plea.  The Fifth Amendment's Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense."  *Constant v. Martuscello*, 677 F. App'x 727, 728 (2d Cir. 2017) (summary order) (internal citations and quotation marks omitted), *cert. denied*, 137 S. Ct. 2204 (2017).  "As a general rule, jeopardy attaches in a criminal case at the time the [] court accepts the defendant's guilty plea."  *United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999).  But the mere acceptance of a guilty plea by the court does not create an immutable bar to subsequent prosecution.  *See United States v. Olmeda*, 461 F.3d 271, 279 n.7 (2d Cir. 2006).  There are "certain circumstances [where]

jeopardy is not deemed to [have] attach[ed] at the time of the guilty plea, for example, where a defendant subsequently withdraws his plea."  *Id.* (citing *United States v. Podde*, 105 F.3d 813, 816-17 (2d Cir. 1997)).  That is exactly what happened here.  And the fact that Reinard did not announce on the record that he withdrew his plea until after he pleaded guilty to the new charge is of no moment.  The parties already had agreed to the correction, and so Reinard's argument elevates form over substance to a fault.

Because a jurisdictional defect invalidated Reinard's plea on March 26, 2010, jeopardy did not attach as a result of that plea.  For that reason, and because Reinard withdrew that plea under an agreement with the prosecution, his double jeopardy claim lacks merit.

### C.    Ineffective Assistance of Counsel

To be entitled to relief based on the ineffective assistance of counsel, a petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation."  *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).  Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If counsel's conduct was not deficient, the court need not reach the issue of prejudice.  *Id.* at 697.

Just as the *Strickland* calculus is deferential to a lawyer's trial strategy, a federal court will defer to a state court's application of *Strickland*. *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Here, the state courts already have ruled on at least some of Reinard's claims that his counsel provided ineffective assistance. State Record at 243, 506. With respect to those claims, the question for this Court therefore is "not whether the state court was incorrect or erroneous in rejecting [the petitioner's] ineffective assistance of counsel claim, but whether it was 'objectively unreasonable' in doing so." *Id.* So long as "'fair[-]minded jurists could disagree' on the correctness of the state court's decision," this Court must deny the habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### 1. Ineffective Assistance of Counsel at Plea and Sentencing

Reinard asserts that his attorney was ineffective in failing to (1) advise him that lack of mental capacity was an affirmative defense; (2) advise him about SOMTA fees and the possibility of civil confinement; (3) object to the court's questioning at sentencing; (4) challenge the sentencing court's rejection of Dr. Heffler's report; and (5) move to dismiss the indictment as defective under state law. *See* Docket Item 2 at 66-68.

#### a. Affirmative Defense

Reinard argues that his attorney was ineffective in failing to tell him that if he went to trial, he could argue that he lacked the mental capacity to understand his crimes. *Id.* at 66. He asserts that if his attorney had told him about this affirmative defense, he would have gone to trial and "likely would have ended up with less time." *Id.* at 67.

The decision not to pursue a particular defense "is typically a question of trial strategy that reviewing courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (alternation omitted) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)).   "Thus, a lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *Id.* (alternation omitted) (citing *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996)).   A petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"   *Strickland*, 466 U.S. at 689 (citation omitted).

With respect to the second prong, "the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   A petitioner's self-serving "testimony after the fact 'suffers from obvious credibility problems,'" so more than the petitioner's statement that "he would have gone to trial had he known of the defense" is needed to demonstrate prejudice. *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991).

Reinard fails to meet either prong of the ineffective-assistance-of-counsel test.   In New York, a criminal defendant may raise an affirmative defense that he lacks "criminal responsibility by reason of mental disease or defect" that results in a "lack [of] substantial capacity to know or appreciate either . . . [t]he nature or consequences of [his] conduct; or [t]hat such conduct was wrong."   N.Y. Penal L. § 40.15.   But Reinard offers no evidence that his counsel should have pursued that defense, much less that it

would have been successful.  In fact, Reinard told the sentencing court, "I understand what I did was wrong" and "unforgivable."  Docket Item 2-2 at 93-94.  Moreover, Dr. Heffler's report did not suggest that Reinard lacked capacity to appreciate that what he did was wrong; on the contrary, Dr. Heffler found that Reinard had no "symptoms of a severe emotional disturbance[,] . . . thought disorder[,] or psychopathy."  *Id.* at 34.  There is nothing in the record, therefore, that supports Reinard's assertion this affirmative defense was good strategy or that it would have been successful at trial.  To the extent that Reinard's habeas petition is based on the alleged ineffective assistance of counsel with respect to the affirmative defense of lack of mental capacity, it therefore is denied.

### b.  SOMTA Consequences

Reinard also argues that his attorney was ineffective in failing to tell him about the $4,000 supplemental sex offender victim fees and the possibility of post-release civil confinement.  Docket Item 2 at 66.  Reinard says he "would never have pled guilty if counsel had been truthful with [him]."  *Id.* at 67.

In support of his claims that he did not know about the mandatory SOMTA fees and confinement, Reinard submits affidavits from his sister, Docket Item 2-1 at 54 (stating Reinard was not told about SOMTA fees), and his parents, *id.* at 58, 63 (stating that Reinard was not informed that he could serve more than 25 years).[13]  The 440.10

---

[13] The assertion that Reinard was told that his maximum sentence was 25 years is plainly incorrect.  In fact, Reinard was told several times in several ways that he could face a 40-year sentence: by his attorney both orally and in a letter, *see* State Record at 1 (Letter to Reinard from George V.C. Muscato, Esq., dated Mar. 25, 2010, referring to prior discussions); in his appeal waivers, *id.* at 18, 60; and during plea colloquies on March 26, 2010, and June 8, 2010, *id.* at 5, 31.

court, however, already found these letters to be "self-serving."  State Record at 506.

Indeed, the assertions by Reinard's family that Reinard did not know about SOMTA

consequences are belied by the record.  The sentencing court told Reinard that he

would owe $4,000 in victim fees, something that he did not object to or even question.

Docket Item 2-2 at 95.  And in his first 440.10 motion, Reinard acknowledged that his

appeal waivers informed him of the possibility of civil commitment.  State Record at 303;

*see also id.* at 474 (440.10 motion also including a letter from George V.C. Muscato,

Esq., dated Mar. 25, 2010, warning Reinard that he "may be subject to civil confinement

which [he previously] explained to [Reinard] in great detail").

The record therefore contradicts Reinard's claim that he was unaware of the

SOMTA consequences attached to his plea.  Moreover, two state courts rejected

Reinard's argument that his counsel was ineffective in failing to inform Reinard of the

$4,000 in victims fees.  *See* State Record at 243, 506.  Because federal courts defer to

state courts' application of *Strickland*, the question is whether the state courts' rejection

of Reinard's claims of ineffective assistance were "objectively unreasonable."  *See*

*Sellan*, 261 F.3d at 315.  They were not.  For that reason, Reinard's claim of ineffective

assistance of counsel with respect to SOMTA consequences is meritless.

### c.  Sentencing Court's Questions and Comments

Reinard also argues that his attorney was ineffective at sentencing when he did

not object to the court's questions and comments about Dr. Heffler's report.  Docket

Item 2 at 67.  As discussed above in some detail, Reinard voluntarily spoke at

sentencing, and the sentencing court did not inappropriately question him.  *See supra* at

13-15.  Indeed, it would have been foolhardy for counsel to object to appropriate

questions posed by the sentencing judge.  And, as also noted above, the sentencing court appropriately exercised its discretion in rejecting Dr. Heffler's report.  *See supra* at 18-19; *see also Pepper*, 562 U.S. at 480.

"The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which [a p]etitioner [i]s entitled."  *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).  Reinard's attorney therefore was not "constitutionally deficient" in failing to raise meritless objections.  *See Parks v. Sheahan*, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) (citation omitted).

### d. Dismissal of Indictment

Reinard also argues that his counsel should have moved to dismiss the indictment as violating the Double Jeopardy Clause.  Docket Item 2 at 67.  But as already explained above, Reinard's double jeopardy protections were not violated.  *See supra* at 19-20.  Given the legality of his plea and plea agreement, Reinard's claim is meritless.  *See Nash v. Ercole*, 2009 WL  2778247, at *15 (S.D.N.Y. Sept. 1, 2009) (finding an ineffective-assistance-of-counsel claim for failure to move to dismiss indictment for not specifying the names of the victims meritless where the statute did not require it).

### 2.  Ineffective Assistance of Appellate Counsel

Reinard argues that his appellate counsel likewise was ineffective in failing to argue that his plea and appeal waivers were constitutionally invalid.  Docket Item 2 at 43.  The Supreme Court has held that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528

U.S. 259, 288 (2000).  Indeed, "it is difficult to demonstrate that [appellate] counsel was incompetent" for omitting an issue because that would require showing "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present."  *Id.*

Reinard's appellate counsel told Reinard that she would look into whether she "c[ould] raise issues concerning the validity of [his] plea."  Docket Item 2-2 at 4.  The fact that she did not ultimately raise those issues suggests that she did not think that they were viable.[14]  *See id.*  Moreover, Reinard himself raised the claim that his plea was constitutionally invalid in his *pro se* supplemental brief, State Record at 24-29, and the Appellate Division considered that claim and denied it, *People v. Reinard*, 134 A.D.3d at 1408, 22 N.Y.S.3d at 271; *see generally Harvey v. Capra*, 2017 WL 1184222, at *7 (N.D.N.Y. Mar. 29, 2017) (holding that a petitioner "cannot establish that he was prejudice[d] by his attorney's failure to raise on direct appeal arguments that he himself raised and were subsequently rejected").  Reinard's argument therefore fails under *Strickland*, and his claim of ineffective assistance of appellate counsel lacks merit.

Because the habeas petition is dismissed, Reinard's requests for appointment of counsel and an evidentiary hearing, *see* Docket Item 18 at 12, 18, as well as his request for discovery, Docket Item 2 at 15, are denied.  Reinard's request for an extension of time to reply to the motion for a stay is denied as moot because Reinard filed a letter in reply.  *See* Docket Item 24.  Reinard's request for a hearing on the adequacy of certain state criminal procedures, *see* Docket Item 18 at 14-16, is denied as not cognizable on

---

[14] Instead, she argued that Reinard's plea was void because he did not understand the terms of the agreement with respect to sentencing.  Docket Item 2-2 at 4.  The Appellate Division rejected that claim both as unpreserved and on the merits. *Reinard*, 134 A.D.3d at 1408, 22 N.Y.S. 3d at 270.

habeas review, as more thoroughly explained below, *see infra*.  And Reinard's request

for an expansion of the record to include documents allegedly omitted by the

respondent, *see id.* at 16-18, is denied as moot because Reinard now has submitted the

documents in question, *see* Docket Item 19.

## III.    NONCOGNIZABLE CLAIMS

Reinard also brings several claims regarding New York law and challenging his

sentence under the Eighth Amendment.  *See* Docket Item 2 at 49, 54, 59, 70.

### A.    Challenge to State Post-Conviction Procedures

Reinard challenges New York's post-conviction review process as faulty and

inadequate to provide meaningful review of appeals.  Docket Item 2 at 49.  Judge

Roemer found that because "New York's statutory framework for adjudicating

[Reinard's] claims is not itself a basis for [his] continued imprisonment, [] any flaw in that

framework is not within the limited scope" of habeas review.  Docket Item 25 at 33-34.

This Court agrees.

Reinard also argues that the state courts' denial of his various requests for relief

denied him due process.  *See* Docket Item 2 at 49.  But as already noted above, the

state courts did not violate clearly established federal law in denying Reinard relief.  *See*

*supra* at 13-26.  And to the extent that Reinard "claims a violation of a right conferred by

New York statute, his claim is not cognizable on habeas review."  *Shenouda v. Breslin*,

2004 WL 1918805, at *6 (E.D.N.Y. Aug. 27, 2004) (citing 28 U.S.C. § 2254(d)(1)); *see*

*also Cruz v. Smith*, 2010 WL 582348, at *28-*29 (S.D.N.Y. Feb. 17, 2010) (dismissing

petitioner's claim that he was deprived of his due process rights when the trial court

denied his 440.10 motion); *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001)

(finding that a due process claim for failure to hold a 440.10 hearing was not cognizable on habeas review).

Reinard's related argument that he improperly was denied counsel in his 440.10 proceedings, Docket Item 2 at 54, also fails. There is no "constitutional right to counsel when mounting collateral attacks" on a conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Casado v. Sheehan*, 2017 WL 2334885, at *3 (W.D.N.Y. May 30, 2017) (finding that the petitioner was not entitled to representation in 440.10 proceedings).

This Court therefore agrees with Judge Roemer that to the extent Reinard argues that his rights under New York law were violated, his challenge is not cognizable on habeas review. And to the extent he argues that New York law violated his right to due process, his claims are meritless.

### B.    Challenge to Plea Procedures

Reinard argues that the procedures used to correct his plea violated New York law and his right to due process. Docket Item 2 at 70, 73. But as just explained, violations of state law are not grounds for habeas relief. *See Shenouda*, 2004 WL 1918805, at *6; *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). This claim therefore is not cognizable on habeas review.

Reinard's argument that the plea procedures violated his right to due process fares no better. "A habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label." *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017) (citing *Gryger v. Burke*, 334 U.S. 728, 731 (1948)).

"Rather, the habeas applicant should 'include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle [him] to relief.'" *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-63, (1996); *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (explaining that the applicant must "draw[] enough of a connection" between the right to due process and the sentencing court's alleged errors "to render his claim cognizable on habeas review")). Reinard did not do this here. Instead, Reinard argues only that because the proper state procedures were not followed, his due process rights necessarily were violated. See Docket Item 2 at 73-74. That alone is insufficient to transform this state-law claim into a constitutional claim.

### C.    Challenge to Sentence Length

Reinard argues that his 40-year sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. Docket Item 2 at 59. But there is "[n]o federal constitutional issue [] presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007).

Reinard was sentenced to 40 years' imprisonment. Docket Item 2-2 at 95. That sentence was within the permissible statutory range, *see id.* at 55; *see also id.* at 69, and Reinard knew that when he entered into the plea agreement, *see* State Record at 18, 60 (possibility of a 40-year sentence expressly addressed in appeal waivers). Reinard also was sentenced to 60 years' supervised release. Docket Item 2-2 at 95 (sentencing Reinard to 20 years' post-release supervision on each B violent felony conviction and 10 years' post-release supervision on each E felony conviction).

Although his attorney's letter incorrectly stated that the maximum supervised release was 20 years, *see* State Record at 1, the appeal waiver that Reinard signed before he pleaded guilty correctly noted that a total of 60 years was possible under New York law, *see id.* at 18.  This Court therefore agrees with Judge Roemer that this claim is not cognizable on habeas review.

### D.      Challenge to Mandatory Sex Offender Victim Fees

Reinard challenges the constitutionality of New York Penal Law section 60.35(1)(b)—which imposes a $1000 per-victim fee on anyone convicted of a sexual offense—as violating his equal protection rights.  Docket Item 2 at 74.  But habeas relief "may not be used to bring collateral challenges addressed solely to noncustodial punishments such as fines and restitution."  *United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018) (quoting *Kaminski v. United States*, 339 F.3d 84, 86-87 (2d Cir. 2003) (internal quotations omitted).  "[E]ven where the petitioner is physically in custody, he cannot use a habeas petition to challenge a non-custodial aspect of his sentence, such as the imposition of a fine or restitution."  *Gainey v. Ward*, 2019 WL 6608844, at *4 (W.D.N.Y. Dec. 5, 2019) (citing *United States v. Munson*, 2019 WL 188493, at *2 (S.D.N.Y. Jan. 14, 2019)).

Because the $4,000 in supplemental sex offender victim fees is a non-custodial punishment, Reinard's argument is not cognizable on habeas review.

### <u>CONCLUSION</u>

For the reasons stated above and in the R&R, Reinard's motion for a stay and abeyance, Docket Item 18, is DENIED; his motion for an extension of time, Docket Item 36, is DENIED as moot; his motion for summary judgment, Docket Item 37, is DENIED

as moot; his motions for discovery, Docket Item 2, as well as for an extension of the record, appointment of counsel, and a hearing, Docket Item 18, are DENIED; and the petition for a writ of habeas corpus, Docket Item 1, is DENIED and this matter DISMISSED.  The Clerk of the Court shall close the file.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438 (1962).  The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, Reinard has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

Reinard must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: May 4, 2021
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE